UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RUBY M. YARBOROUGH,

                Plaintiff,           Civil Action No. 20-12286

v.                             Terrence G. Berg
                                  United States District Judge

COMMISSIONER OF          David R. Grand
SOCIAL SECURITY,        United States Magistrate Judge

                Defendant.

_____/

## REPORT AND RECOMMENDATION ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 20, 22)

Plaintiff Ruby M. Yarborough ("Yarborough") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 20, 22), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.    RECOMMENDATION

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Yarborough was not disabled under the Act during the relevant time period is not supported by substantial evidence. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 22)**

be **DENIED,** Yarborough's Motion for Summary Judgment **(ECF No. 20)** be **GRANTED** to the extent it seeks remand, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **REMANDED.**

## II.    REPORT

### A.    Background

Yarborough was 43 years old at the time of filing her applications on February 6, 2017.  (PageID.140, 190).[1]  At 5'6" tall, she weighed approximately 185 pounds during the relevant time period.   (PageID.140, 420).   She completed the tenth grade. (PageID.421).  Previously, Yarborough worked as a cashier and waitress.  (PageID.93, 421).  She currently lives alone in a mobile home.  (PageID.88).  Yarborough's alleged disabling conditions include spinal cord injury, fusion, hypoglycemia, depression, and anxiety. (PageID.128, 420).   Her amended alleged onset date is January 23, 2016. (PageID.61, 89).

After Yarborough's applications for SSI and DIB were denied at the initial level on October 16, 2017 (PageID.152-54, 183-86), she timely requested an administrative hearing, which was held on December 21, 2018, before ALJ Ronald Sweeda (PageID.100-27).  Yarborough, who was represented by attorney Byron P. David, testified at the hearing, as did vocational expert ("VE") Tonetta D. Watson-Coleman.  (*Id.*).  On January 29, 2019, the ALJ issued a written decision finding that Yarborough is not disabled under the Act. (PageID.187-99).  On July 11, 2019, the Appeals Council granted review, vacating the

---

[1] Standalone citations to "PageID.___" are all to the administrative transcript in this case, which can be found at ECF No. 15.

2

ALJ's decision and remanding for consideration of a new opinion from a treating physician stating that Yarborough "requires a walker with wheels." (PageID.207-08).

On remand, ALJ Sweeda held an administrative hearing on January 31, 2021. (PageID.82-99). Yarborough, who was again represented by attorney David, testified at the hearing, as did VE Arthur F. Schmitt. (*Id.*). On February 13, 2020, the ALJ issued a written decision finding that Yarborough is not disabled under the Act. (PageID.58-74). On June 25, 2020, the Appeals Council denied review. (PageID.47-51). Yarborough timely filed for judicial review of the final decision on August 25, 2020. (ECF No. 1).

The Court has thoroughly reviewed the transcript in this matter, including Yarborough's medical record, function and disability reports, and testimony as to her conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B.    The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" in relevant part as the:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps . . . .  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found, on remand, that Yarborough is not disabled under the Act.  At Step One, the ALJ found that Yarborough had not engaged in substantial gainful activity since May 1, 2013.  (PageID.64).  At Step Two, the ALJ found that she had severe impairments of degenerative disc disease, obesity, anxiety, and depression.  (PageID.64).  At Step Three, the ALJ found that Yarborough's

4

impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment.  (PageID.64-66).

The ALJ then assessed Yarborough's residual functional capacity ("RFC"), concluding that she is capable of performing sedentary work, with the following additional limitations:

> she can never climb ladders, ropes, or scaffolds or be exposed to work place hazards; she can occasionally crouch, kneel, and crawl; and she can frequently climb ramps or stairs, stoop, and balance.  She can concentrate sufficiently in two-hour increments to perform simple, routine, repetitive tasks.

(PageID.66).

At Step Four, the ALJ found that Yarborough is unable to perform any past relevant work as a convenience store cashier or waitress.  (PageID.72).  At Step Five, the ALJ found, based in part on the VE's testimony, that given Yarborough's age, education, work experience, and RFC, she was capable of performing sedentary unskilled work as a telephone quotation clerk (283,000 jobs nationally), surveillance system monitor (1,500,000 jobs), and ticket seller (75,000 job).  (PageID.72-73).  As a result, the ALJ concluded that Yarborough was not disabled under the Act.  (PageID.73).

### C.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v.*

*Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted).  The phrase "substantial evidence" is a "term of art …." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).  "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id*. (internal citations omitted).  "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence …  is 'more than a mere scintilla.'" *Id.* (internal citations omitted).  Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.  *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if

substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

### D.    Analysis

In her motion for summary judgment, Yarborough argues that the ALJ's decision, on remand from the Appeals Council, is not supported by substantial evidence because the ALJ erred in his weighing of opinions from her treating physician, Dr. C. Gregory Kang, M.D., and a certified rehabilitation counselor, James R. Myers ("Mr. Myers").[2]  First, Yarborough primarily takes issue with the ALJ's rejection of Dr. Kang's two opinions regarding the nature and severity of her conditions and resulting functional limitations in letters dated October 30, 2017, and November 8, 2018, for reasons that were unspecific and contradicted by the record.   Second, Yarborough argues that the ALJ erred in dismissing Mr. Myers' vocational evaluation by inappropriately presuming bias on the sole basis that the evaluation was sought out by her attorney.  For the reasons set forth below, the Court finds that the ALJ's handling of the opinion evidence is not supported by substantial evidence and that, as a result, remand is required.

### 1.  Dr. Kang's Opinions

Yarborough's primary argument is that the "ALJ's rationale [] violates the treating physician rule with regard to Dr. Kang's opinions, warranting remand."  (ECF No. 20,

---

[2] Yarborough also argues that the ALJ (1) failed to comply with the Appeals Council's remand order by failing to appropriately evaluate her need for a walker, and (2) erroneously discounted her subjective complaints and testimony.  (ECF No. 20, PageID.2685-88, 2695-99).  Because the Court is recommending remand on other grounds, it need not discuss in detail the merits of these arguments.  On remand, however, the ALJ should give full and fair consideration to these issues.

PageID.2695).  The treating physician rule, which applied to Yarborough's claims given that she filed them on February 6, 2017, "mandate[s] that the ALJ 'will' give a treating source's opinion controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'"  *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(c)(2)).  "If the ALJ declines to give a treating source's opinion controlling weight, [the ALJ] must then balance the following factors to determine what weight to give it: 'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source.'"  *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)); *see, e.g.*, *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010) ("Even when inconsistent with other evidence, a treating source's medical opinions remain entitled to deference and must be weighed using the factors provided in 20 C.F.R. §§ 404.1527 and 416.927.").

"Importantly, [under the treating physician rule] the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given to a] treating source's opinion.'"  *Cole*, 661 F.3d at 937 (quoting 20 C.F.R. § 404.1527(c)(2)).  "This requirement is not simply a formality; it is to safeguard the claimant's procedural rights.  It is intended 'to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that [her] physician has deemed [her] disabled and therefore might be especially bewildered when

told by an administrative bureaucracy that [s]he is not.'" *Id.* at 937-38 (quoting *Wilson*, 378 F.3d at 544).  The Sixth Circuit "has made clear that [it will] not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and [] will continue remanding when [] encounter[ing] opinions from ALJ's that do not comprehensively set for the reasons for the weight assigned to a treating physician's opinion." *Id.* at 939; *see also Schultz v. Comm'r of Soc. Sec.*, No. 15-12473, 2016 WL 4577049, at *5 (E.D. Mich. Aug. 10, 2016).

*a.  October 2017 Opinion*

On October 30, 2017, Dr. Kang wrote a letter, in which he opined:

> [] Yarborough suffers from chronic lower back and leg pain due to failed back surgery syndrome.  She has significant functional limitations including inability to sit or stand for prolong[ed] periods of time.  She has difficulty with functional tasks such as bending, stooping, and lifting.  Because of her current medication condition, I do believe she is incapable of any type of gainful employment.  Her condition is chronic and unlikely to change in the future.

(PageID.931).

The ALJ gave this opinion little weight, based on the following reasons:

> [] I have considered the opinion of Dr. Kang from October 2017 that the claimant has difficulty sitting/standing for prolonged periods, bending, stooping, and lifting and was incapable of gainful employment due to chronic pain related to failed back surgery.  While his initial notes documented no motor or neurological deficits on exam, his reports change over the course of his treatment.  However, there is no intervening medical event that would cause a change and he is the only one who is finding abnormalities.  I do not find that Dr. Kang's opinion is medically supported and give the opinion little weight.  The doctor's assessment was based primarily on the claimant's subjective symptoms, which, for reasons stated in detail above, are not reliable.  The lack of substantial support from the other objective evidence of record renders the opinion less persuasive.

(PageID.71).

In her motion, Yarborough argues that the ALJ engaged in "inappropriate speculation" by "inventing a further requirement that a 'medical event' must be identified" for the precise cause for the deterioration of her condition.  (ECF No. 20, PageID.2692). She also contends that the ALJ incorrectly asserted that Dr. Kang was "the only one who is finding abnormalities," as a number of medical records from other sources also document abnormal findings.  (*Id.*, PageID.2692-93).  Finally, she argues that "[t]he ALJ's speculative assumption that the opinion was based primarily on subjective complaints should be rejected" because Dr. Kang's opinion is supported by objective findings in his own progress notes, and the ALJ's reasoning was not otherwise "sufficiently specific, as a matter of law."  (*Id.*, PageID.2693-94).

In response, the Commissioner argues that "[t]he ALJ [properly] afforded Dr. Kang's opinion 'little weight' because it was inconsistent with the evidence of record, including the objective medical record."  (ECF No. 22, PageID.2716).  However, that is not a fair characterization of the ALJ's articulated reasons for discounting the opinion. Rather, the ALJ expressly stated that he discounted Dr. Kang's opinion because Dr. Kang was "the ***only one who is finding abnormalities***" without identifying any "intervening medical event that would cause a change," which led the ALJ to conclude that the opinion "***was based primarily on claimant's subjective symptoms***, which [] are not reliable."

(PageID.71) (emphasis added).[3]  This analysis is problematic for several reasons.

First, the ALJ's statement that Dr. Kang "is the only one who is finding abnormalities" is belied by the record.  To start, there is no dispute that Yarborough suffered from a back injury requiring surgical procedures in the form of an L5-S1 fusion in January 2014 and a subsequent discectomy at the same level in October 2014. (PageID.1177-78, 1201).  Following these procedures, there exists a litany of treatment records *from multiple other sources* documenting "abnormalities" related to Yarborough's gait, back, and lower extremities.  For example, in the months preceding Dr. Kang's opinion, Dr. Erin Watson, M.D., referred Yarborough for aquatic physical therapy starting on July 26, 2017.  (PageID.1596).  Yarborough's initial exam at physical therapy reflected that her posture was "decreased in lumbar lordosis," she had "moderate" tenderness in her Erector Spinae, Piriformis, and Quadratus Lumborum, she had reduced sensation in her left lower extremity, her gait was "deviated," she used a cane for "decreased [] weight bearing" on her left side, and she had "decreased cadence" and "no trunk rotation." (PageID.1597).  These same exam findings were consistently documented in progress notes by her physical therapists over *her next 17 sessions* between July 28th and September 6th

---

[3] The ALJ also stated that "[t]he lack of substantial support from the other objective evidence of record renders the opinion less persuasive."  However, the Sixth Circuit has repeatedly warned that "it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; *there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick.*"  *Shields v. Comm'r of Soc. Sec.*, 732 F. App'x 430, 439 (6th Cir. 2018) (emphasis added).  As discussed below, not only did the ALJ fail to identify specific discrepancies, but his reasoning also reflects an impermissible focus on only the portion of the record supporting his conclusions without adequately addressing significant contradictory evidence. *See Laskowski v. Apfel*, 100 F. Supp. 2d 474, 482 (E.D. Mich. 2000) (substantial evidence "cannot be based on fragments of the record").

of 2017, with additional "Observations" on August 7, 2017, that she was "Limited to about 5 minutes with walking, then has to rest," and on September 1, 2017, that she was "Still with 'nerve' pain throughout the anterior legs down to the feet." (PageID.1541-95). By September 6, 2017, Yarborough was discharged from physical therapy after she "reached [a] plateau with rehabilitation interventions" and mostly failed to meet her goals to "reduce reported pain with standing" and/or "improve" strength/flexion in her lower extremities and/or trunk. (PageID.1541-45 ("Pt has made slight progress with LE strength. No significant change in lumbar ROM.")).

Similar abnormalities were well-documented even after Dr. Kang's opinion in October 2017. For instance, examinations with Brian Loskill, PA, in January and February of 2018 continued to reflect "Abnormal" musculoskeletal and neurological findings, including "decreased lumbar range of motion" in the back, "tenderness in the lower back muscles," an "antalgic gait," "tenderness over the knees and feet bilaterally," and "discomfort down the legs bilaterally." (PageID.1000-03). By March 2018, PA Loskill noted that, "since her last visit," Yarborough "had an episode where her right leg got weak and she fell," so "she has been using a cane more for balance and stability since this episode." (PageID.997). On exam, Yarborough was noted as ambulating "with a cane" with the same "antalgic gait," as well as "tenderness in the right ankle and foot area," "[d]iscomfort with weight-bearing," and "discomfort and decreased sensation in the left ankle and foot." (PageID.997-98). PA Loskill noted similar findings of antalgic gait, ambulation with a cane, and/or tenderness in the knees and legs bilaterally in May 2018, as late as August and October of 2019. (PageID.995, 2457, 2550; *see also* PageID.2552-

53 (noting concern that "her chronic back pain issues have led to her altering her gait, which is now causing issues for her knees")).[4]

Second, while the ALJ points to a lack of an "intervening medical event" that would explain Dr. Kang's abnormal findings, the ALJ fails to meaningfully discuss, if not entirely overlooks, Yarborough's well-documented diagnoses of lumbar radiculopathy throughout the relevant period.[5]  For instance, an examination with Dr. Watson on January 12, 2017, indicated "Positive tenderness over the bilateral PSIS and paraspinals L3-S1, worsened with orders flexion," and Yarborough was assessed with "Lumbosacral radiculopathy." (PageID.918-20).  In follow-up treatments specifically for "Lumbosacral radiculopathy" in March and April of 2017, Dr. Watson noted "positive tenderness [] paraspinals L3-S1," "tenderness over the bilateral PSIS," and assessed "Lumbosacral radiculopathy" and "Thoracic and lumbosacral neuritis" (or "Radiculopathy, lumbosacral region"). (PageID.907-11).  In June 2017, Dr. Watson again noted "Positive tenderness over the bilateral PSIS and paraspinals L3-S1, worse with forward flexion," and assessed "Thoracic

---

[4] Relatedly, in a separate discussion of the medical evidence, the ALJ states, "While Dr. Kang later notes that the claimant had an antalgic gait, *this is not corroborated in treatment notes from other providers nor is there objective evidence to support this*."  (PageID.68) (emphasis added).  Based on the exam findings from other sources discussed above, such a conclusion is clearly belied by the record and reflects the ALJ's failure to give reasoned consideration to the competing evidence. *See Trudell ex rel. Bushong v. Apfel*, 130 F. Supp. 2d 891, 895 (E.D. Mich. 2001) ("'Substantiality of the evidence must be based upon the record taken as a whole.  Substantial evidence is not simply some evidence, or even a great deal of evidence.  Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'").

[5] In assessing the RFC, the ALJ's reference to radiculopathy is limited to a general statement that "radicular symptoms are not supported by the medical evidence," and a reference to one occasion in which Yarborough exhibited "no clear-cut radicular symptoms."  (PageID.68; *see also* PageID.2515 (Dr. Mills' January 2, 2019, treatment note stating under "HPI" that "She is here today with symptoms of axial back pain.  No clear-cut radicular symptoms.").

and lumbosacral neuritis" as well as "Lumbosacral radiculopathy." (PageID.1605).

Similar diagnoses were also present a year later in June 2018 when Dr. William L. Mills, M.D., assessed Yarborough with "radiculopathy" in the "lumbar region," noting "tenderness of the spinous process at L[] and the sacrum," "tenderness of the paraspinal region at L" on both the left and right side of the lumbar spine, "pain" with active and passive range of motion, and a "Disc bulge with facet hypertrophy and mild to moderate spinal stenosis L4-5." (PageID.1614-16). Even during certain exams where Yarborough demonstrated "normal gait and ambulating with no assistive devices," Dr. Mills found "tenderness of the spinous process" and "pain" with active motion, and assessed "Left L4-5 disc protrusion with left lumbar radiculopathy" as late as November 2019. (PageID.2529; *see also* PageID.2544 (Dr. Kang diagnosing Yarborough with "lumbar radiculopathy" in December 2019)).

Indeed, Dr. Mills' treatment note and prescription on January 2, 2019, reflect that he prescribed Yarborough a walker ***specifically to address*** her "Lumbar radiculopathy." (PageID.2516 (treatment note prescribing "WALKER W/ WHEELS" below an assessment of "Lumbar radiculopathy"), PageID.2435 (prescription for a walker "w/ wheels/seat" for her "Applicable Diagnoses" of "Lumbar radiculopathy")).[6] While the ALJ points to a

---

[6] The Court notes that this prescription was the basis for the Appeal Council's order vacating and remanding the ALJ's initial hearing decision. (PageID.207 ("In support of her request for review, the claimant submitted an opinion from a treating source. That evidence shows that on January 2, 2019, prior to the [ALJ's] decision, [Dr. Mills] stated that the claimant requires a walker with wheels. In light of this new evidence, further consideration of the claimant's functional abilities is warranted.")). Because the Court recommends remand based on Yarborough's arguments concerning the weighing of opinions from Dr. Kang and Mr. Myers, it does not address in detail her argument that the ALJ failed to comply with the remand order (ECF No. 20, PageID.2685-88). On remand, however, the ALJ should thoroughly address this issue.

statement in Dr. Mills' treatment note that "[Yarborough] *would like to have a walker with wheels*" as suggesting that she "*asked* for an assistive device" and thus did not *require* one, this does not negate Dr. Mills' diagnosis itself.  (PageID.70, 2515; *see also* PageID.92). Rather, to the extent the context surrounding this prescription bears on the *severity* of Yarborough's lumbar radiculopathy, the ALJ's reasoning that Dr. Mills merely "complied with the request" would not extend to Dr. Mills' independent determination that it was appropriate to include *a seat* on top of her baseline "request" for a "walker with wheels" – a significant additional aid for walking and standing that the ALJ fails to mention at all. (*See, e.g.*, PageID.67 ("A rolling walker has been prescribed"), PageID.68 ("The claimant requested a walker with wheels")).  Otherwise, to the extent the ALJ points to "numerous physical examinations indicating no motor or neurological deficits, normal gait, and negative straight leg raises" in finding that Yarborough did not "require[] a walker," this is another example of the ALJ focusing on only the evidence supporting his conclusions, *without adequately discussing the contradictory portions of record* detailed above.

Finally, having established that portions of the record consist of significant contradictory evidence, the ALJ's assumption that Dr. Kang's opinion was "based primarily on claimant's subjective symptoms" is unsupported by the record.  (PageID.71). Even without considering the abnormal exam findings from other sources, Dr. Kang's own treatment records reflect similar abnormalities on physical examination.  Specifically, exams of Yarborough's extremities and her musculoskeletal and neurological systems on October 16, 2017, all resulted in "Abnormal" findings because Yarborough had an "Antalgic gait," she "ambulates with a cane," and she had "Discomfort in the knees

bilaterally," "Discomfort with weight-bearing," and "Discomfort in the legs posteriorly, medially and then into the feet." (PageID.1010). Subsequent treatment notes in November and December of 2017 continued to document "Abnormal" exam findings that Yarborough ambulated with a cane and experienced decreased sensation. (PageID.1004-06). While there may have also been exams indicating relatively normal findings at certain times, the inference the ALJ draws – that the opinion was based "primarily on [Yarborough's] subjective symptoms" – is simply not supported by substantial evidence where the record also reflects a number of Dr. Kang's own objective findings of abnormalities based on multiple physical exams.[7]

In sum, the ALJ's articulated reasons for discounting Dr. Kang's October 2017 opinion violate the treating physician rule where they are based on an inaccurate and/or selective view of the record. Moreover, the ALJ's single statement that the opinion was otherwise incompatible with "other objective evidence" falls well short of his duty to "identify the specific discrepancies and [] explain why it is [Dr. Kang's] conclusion that

---

[7] To the extent the Commissioner asserts that "[t]he ALJ also found Dr. Kang's opinion was inconsistent with other medical evidence of record including the RFC assessment of the state agency physician[s]" (ECF No. 22, PageID.2717-18), the ALJ did not refer to any state agency physician when discussing Dr. Kang's opinion. Moreover, even in his discussion of the state agency physician's opinions, the ALJ failed to provide *any* details of their underlying findings, stated in conclusory fashion that such opinions were "generally consistent with" and/or "supported by" the "other evidence of record," and even inaccurately stated that he added "a sit/stand option in partial deference to the claimant's complaints," even though the final RFC does not include such option. (PageID.71). In any event, Yarborough correctly asserts that "substantial evidence alone does not excuse non-compliance with [the treating physician rule] as harmless error" (ECF No. 20, PageID.2691), and the Commissioner does not address this point at all regarding Dr. Kang's opinions. Based on the findings detailed above, the Court concurs that the error here was not harmless. *See Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (noting exceptions for a *de minimis* procedural violation); *Wilson*, 378 F.3d at 546.

gets the short end of the stick." *Shields*, 732 F. App'x at 439.

### b. *November 2018 Opinion*

On November 8, 2018, Dr. Kang wrote a second letter, in which he opined that Yarborough "has failed conservative treatment including medical management, physical therapy, injection therapy, as well as spinal cord stimulator"; she "suffers from chronic intractable pain in the low back and both legs"; and "[b]ecause of her medical condition, she is incapable of any type of gainful employment." (PageID.2434).

The ALJ gave this opinion little weight, based on the following reasons:

> Dr. Kang[] submitted a statement in November 2018 in which he reported the claimant had failed all conservative treatment including medical management, physical therapy, injection therapy, as well as spinal cord stimulator. He opined that because of her medical condition, she would be incapable of a[n]y type of gainful employment. A doctor's statement indicating the claimant is "permanent disability," [sic] or "unable to work," is not a medical opinion, but rather an administrative finding dispositive of a case. These issues are reserved to the Commissioner, and as such are not entitled to any special significant weight (20 CFR 404.1527(e)(1)(3) and 416.927(e)(1)(3)). Further, with the number of normal physical examinations contained throughout the record, I do not find that Dr. Kang's opinion is medically supported.

(PageID.71).

Here, the ALJ's handling of Dr. Kang's November 2018 opinion is not supported by substantial evidence. The Court has no quarrel with the ALJ discounting Dr. Kang's statement about Yarborough's inability to engage in "gainful employment," as the issue of disability is reserved to the Commissioner. *See Cosma v. Comm'r of Soc. Sec.*, 652 F. App'x 310, 311 (6th Cir. 2016) (finding that the "ALJ reasonably gave no weight to [the doctor's] opinion because her conclusion that [the plaintiff] is totally disabled is a

determination reserved to the Commissioner").  However, it is not appropriate to discount an opinion in its entirety simply because, in addition to otherwise valid medical opinions, it also contains a statement that goes to the issue of disability.  *See Ebel v. Comm'r of Soc. Sec.*, No. 16-11995, 2017 WL 4928651, at *7 (E.D. Mich. July 24, 2017) (ALJ properly discounted the portion of physician's opinion in which he determined the plaintiff was totally disabled and unable to work).  Thus, while it may be that the ALJ's brief discussion of Dr. Kang's opinions was merely disjointed – his reference to "These issues" is somewhat ambiguous – to the extent the ALJ discounted the other aspects of Dr. Kang's opinion due to its inclusion of a disability finding, such discounting would be in error.[8]

Moreover, the ALJ's reliance on a "number of normal physical examinations contained throughout the record" in finding that the opinion is not "medically supported" suffers from the same flaws discussed above with his handling of Dr. Kang's October 2017 opinion – namely, that the ALJ impermissibly focused on only the portion of the record that supports his conclusions while failing to adequately address other significant record evidence which detracts from those conclusions.  *See Trudell ex rel. Bushong*, 130 F. Supp. 2d at 895; *see also Shields*, 732 F. App'x at 439 ("[I]t is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; ***there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick***.") (emphasis added).  For

---

[8] The Court might not have found an ambiguity on its own, but as discussed below, *see infra* at 21-22, the Commissioner's argument as to Mr. Myers' opinion makes it worth mentioning the issue here.

instance, even after apparently recognizing that Dr. Kang was the main authority overseeing Yarborough's pain management (*see, e.g.,* PageID.69 (noting that Dr. Mills "recommended continued pain management with Dr. Kang"), the ALJ discounted Dr. Kang's opinion that she ***failed such pain management*** and continued to experience "chronic intractable pain" – all with little to no discussion of, for example, the 18 physical therapy sessions documenting minimal progress, varying results from multiple rounds of facet injections, continued issues with pain despite a spinal cord stimulator, and potential needs for more aggressive treatment. (*See, e.g.*, PageID.112-13, PageID.1616 ("She is interested in discussing surgical options"); PageID.2548 ("We are still waiting on results of MRI and her surgeon's opinion regarding her lumbar spine. If the patient is not a candidate for surgery, we may need to consider increasing her opioid medication coverage."); PageID.2556 ("She reports she's not getting quite the coverage she used to get in the back and leg with the stimulator")).

In sum, Yarborough correctly asserts that "the question is not whether there were some normal findings found [] through[out] a voluminous record," but "whether the ALJ properly evaluated the record as a whole in rejecting Dr. Kang's opinion when assessing [her] RFC." (ECF No. 23, PageID.2735). While there is no requirement that the ALJ address every piece of record evidence, *Kornecky*, 167 F. App'x at 508, the law is clear that he does not fairly discharge his duties when he fails to discuss significant contradictory portions of the record. *See Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 435 (6th Cir. 2013) (citing *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 778 (6th Cir. 2008) and *Boulis-Gasche v. Comm'r of Soc. Sec.*, 451 F. App'x 488, 494 (6th Cir. 2011)).

Because the ALJ here relied on certain fragments of the record in discounting Dr. Kang's opinion, but simultaneously ignored significant competing evidence, his decision to discount that opinion is not supported by substantial evidence.

### 2.  *Mr. Myers' January 2016 Vocational Evaluation*

On January 23, 2016, Mr. Myers issued a vocational evaluation based on "[a] Functional Capacity Evaluation (FCE) [] completed on 1/12/2016 at Select Physical Therapy."  (PageID.553-54; *see also* PageID.823-32).  Among other findings, Mr. Myers observed Yarborough "alternating sitting and standing throughout the interview," and that she "ambulates with a cane" and "was unable to reach to the floor during [] testing." (PageID.561).  Mr. Myers opined that Yarborough would be considered "permanently and totally disabled from a Vocational perspective" because she only "demonstrated the ability to sit occasionally and was able to ambulate 12 minutes with assistive support," but "Sedentary positions would require the ability to ambulate effectively and sit constantly (2/3 of the time) or at a minimum frequently (1/3 to 2/3 of time)."  (PageID.562).

The ALJ gave little weight to Mr. Myers' evaluation, reasoning as follows:

> I give little weight to the vocational evaluation performed by James Myers, a rehabilitation counselor, in January 2016, which concluded that the claimant was totally and permanently disabled from a vocational perspective.  Mr. Myers did not offer his opinion on his own initiative, but instead it was performed at the request of the claimant's Worker's Compensation attorney, which can be seen as leading toward a conclusion that the claimant is disabled.

(PageID.71).

In her motion, Yarborough argues that it was "inappropriate for an ALJ to presume bias [] merely because the professional's evaluation or opinion is obtained by an attorney"

20

(ECF No. 20, PageID.2694-95), and the Commissioner effectively concedes that courts have "found error in the ALJ's reliance on the claimants' attorney soliciting the opinion" (ECF No. 22, PageID.2721). Thus, there is no dispute that the ALJ here articulated an improper basis for rejecting Mr. Myers' vocational evaluation. *See Nofsinger v. Comm'r of Soc. Sec.*, 2010 WL 2651600, at *3 n.5 (W.D. Mich. July 1, 2010) (stating it was an "improper basis" to reject a consultative exam because the doctor was "hired by the claimant's attorney for the purposes of assisting the claimant in obtaining benefits"); *Blankenship v. Bowen*, 874 F.2d 1116, 1122 n.8 (6th Cir. 1989) (stating that "[t]here is nothing fundamentally wrong with a lawyer sending a client to a doctor" in addressing the ALJ's negative comments about the referral nature of psychiatric interviews).

Instead, the Commissioner asserts that Yarborough's argument does not apply to "an opinion on an issue reserved for the Commissioner." (ECF No. 22, PageID.2721). Specifically, the Commissioner contends that "[a]s a matter of law, Mr. Myers's evaluation could not affect the outcome of the claim because it opines on an issue reserved for the Commissioner . . . [so] even if the ALJ should have further discussed Mr. Myers's opinion, there was no prejudicial error." (*Id.*, PageID.2720).

But this is the Commissioner's argument, not a finding by the ALJ, and contrary to the Commissioner's argument, Mr. Myers did not solely opine on the issue of disability. Rather, Myers also explained that his conclusion on Yarborough's disability was based on the fact that she "demonstrated the ability to sit occasionally and was able to ambulate 12 minutes with assistive support," and thus would be unable to "ambulate effectively and sit constantly (2/3 of the time) or at a minimum frequently (1/3 to 2/3 of the time)."

(PageID.562).  He also explained that he based his conclusion on his observation that Yarborough had to alternate between "sitting and standing throughout the interview" and her need for "a cane" to ambulate.  (PageID.561).  Thus, as with Dr. Kang's November 2018 opinion, it would have been inappropriate for the ALJ to discount the valid portions of Mr. Myers' evaluation on the sole basis that it also contained a statement concerning the ultimate issue of disability.  *See Ebel*, 2017 WL 4928651, at *7.[9]  The Commissioner does not address these other portions of the evaluation concerning Yarborough's functional limitations, which, taken as true, could preclude even sedentary work.

In sum, because the ALJ's articulated reason for discounting Mr. Myers' opinion was improperly based on the mere fact that it was solicited by Yarborough's attorney, the ALJ erred with respect to his handling of that opinion, as well.

## III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 22)** be **DENIED**, Yarborough's Motion for Summary Judgment **(ECF No. 20)** be **GRANTED** to the extent it seeks remand, and the ALJ's decision be **REMANDED** for further proceedings consistent with this Recommendation.

---

[9] To the extent the Commissioner argues that "ALJs are not expressly required to articulate their reasons for not adopting the opinions of nontreating sources, nor are claimants entitled to this analysis," Mr. Myers is still an "other source" under 20 C.F.R. § 404.1513(d)(1) and therefore "entitled to consideration" by the Commissioner.  *Cole*, 661 F.3d at 939; *see also Ott v. Astrue*, 2010 WL 3087421, at *5 (E.D. Tenn. June 30, 2010) ("The Commissioner is correct that Ms. Brown was not an acceptable medical source.  But that fact alone did not free the ALJ from all responsibility to consider and expressly address Ms. Brown's [Vocational] Evaluation."), *report and recommendation adopted*, 2010 WL 3087420 (E.D. Tenn. Aug. 5, 2010).

Dated: January 18, 2022              s/David R. Grand
Ann Arbor, Michigan               DAVID R. GRAND
                                     United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 18, 2022.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
